{¶ 19} I agree with the majority's reasoning and conclusion overruling the State's first assignment of error. I disagree, however, with its reasoning and conclusion sustaining the State's second assignment of error.
 {¶ 20} A motion for new trial based on recanted testimony requires a trial court to engage in a three-step analysis. The first step in that analysis is to determine whether a witness has recanted.
 {¶ 21} The definition of recant is "[t]o withdraw or renounce prior statements or testimony formally or publicly." Black's LawDictionary 1274 (7th ed. 1999). A witness recants, therefore, by formally or publicly withdrawing or repudiating earlier testimony. In reviewing the first step of the trial court's analysis, this Court must determine whether Mr. Covender presented evidence, in the form of A.S.'s own formal or public statements, that, if believed, would *Page 12 
convince the trial court that she testified falsely at his trial. This determination is, in effect, a determination of whether Mr. Covender submitted sufficient evidence and, therefore, this Court's review of this step is de novo. See State v. Thompkins, 78 Ohio St. 3d 380, 386
(1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33.
 {¶ 22} At Mr. Covender's trial during April 1996, A.S., who at that time was eight years old, testified that Mr. Covender had molested her. She testified that he had given her "a bad touch"; that he had touched her "[i]n both of [her] privates"; that, when he touched her, she had felt "something inside" her; and that it had hurt. In her affidavit that was filed in support of Mr. Covender's motion for new trial, she said that Mr. Covender had never hurt her or attempted to touch her in an inappropriate manner and that he had never molested her. At the evidentiary hearing held by the trial court, she testified that her trial testimony had not been true and that Mr. Covender had never touched her inappropriately or put his finger in her vagina. Accordingly, A.S. made formal and public statements that, if believed, would convince the trial court that she testified falsely at Mr. Covender's trial. The trial court correctly determined that she had recanted.
 {¶ 23} The second step in a trial court's analysis is determining whether to believe the recanted testimony. In this case, the trial court had to determine whether A.S.'s testimony recanting her trial testimony outweighed that trial testimony. In reviewing this step of the analysis, this Court, in effect, must *Page 13 
determine whether the trial court's conclusion that A.S. testified falsely at Mr. Covender's trial was against the manifest weight of the evidence.
 {¶ 24} If the applicable standard is the civil manifest-weight-of-the-evidence standard adopted by the Ohio Supreme Court in State v. Wilson, 113 Ohio St. 3d 382, 2007-Ohio-2202, review of the first step disposes of this step as well. The same evidence that constitutes sufficient evidence also amounts to "some competent, credible evidence going to all the essential elements of the case."Id. at ¶ 26 (quoting C.E. Morris Co. v. Foley Constr. Co.,54 Ohio St. 2d 279, syllabus (1978)). If the applicable standard is the criminal standard, this Court must review all the evidence that was before the trial court, both at the hearing on Mr. Covender's motion for a new trial and at the trial, and determine whether the trial court lost its way and created a manifest miscarriage of justice by concluding that A.S. testified falsely at Mr. Covender's trial:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 25} The evidence presented at Mr. Covender's trial showed that A.S. had been interviewed repeatedly, including a number of times by her mother's stepmother and, separately, by her natural father's step-mother. Some of the interviews conducted by these women were recorded, and others were not. The *Page 14 
ones that were recorded included questionable interview techniques, including asking A.S. to repeat things she had said in earlier, unrecorded interviews and asking her leading questions. The repeated interviews using questionable techniques not only call into question what A.S. said during those interviews, but also what she said during interviews with others and during her trial testimony.
 {¶ 26} Among the evidence presented by the State at trial, was the testimony of a pediatric nurse practitioner who purported to have found physical evidence that both A.S. and her brother, J.S., were sexually abused. This testimony was potentially significant because, if there was physical evidence that A.S. was abused by someone, it is less likely that her trial testimony that she was abused by Mr. Covender was false. On cross-examination, however, the nurse practitioner had to acknowledge that, although a physician had signed off on the report of her purported physical findings, that physician had neither examined the children nor reviewed photographs the nurse practitioner had taken during her own examination. Those photographs, which were taken with equipment that magnifies an image 15 times, failed to show much of the physical evidence she claimed to have found. Further, during her direct testimony, she relied on a 1989 book co-authored by Dr. David Chadwick. On cross-examination, after acknowledging that she considered Dr. Chadwick an authority on child sexual abuse, she had to concede that the physical findings she claimed to have seen on A.S. and J.S. and that she had described as anatomical changes almost always *Page 15 
caused by trauma and that indicates a high probability of sexual abuse, were not included on either a list of "Findings consistent with sexual abuse" or a list of "Findings sometimes seen in sexual abuse, but also with other causes" in a 1992 article co-authored by Dr. Chadwick. Further, a pediatrician who testified at trial on behalf of Mr. Covender said that none of the physical evidence purportedly found by the nurse practitioner tended to prove that either A.S. or J.S. had been sexually abused:
 The physical findings, all of them, are either one hundred percent pristine normal, or they are mild abnormalities, and variants which you would find in 10, 20, 30, even 50 percent of children walking the street who are not abused.
 {¶ 27} It is significant that the nurse practitioner not only purported to find physical evidence that A.S. was sexually abused, but also that J.S. was sexually abused. J.S. too has recanted his trial testimony, explaining that he fabricated the story about Mr. Covender molesting him because he did not want to be separated from A.S. The State has not appealed that part of the trial court's order in which it granted Mr. Covender a new trial on the charge based upon his alleged abuse of J.S. The nurse practitioner's trial testimony is so lacking in credibility that it adds no support to the credibility of A.S.'s trial testimony.
 {¶ 28} As mentioned previously, at the hearing on Mr. Covender's motion for new trial, A. S. testified that her trial testimony had not been true and that Mr. Covender had never touched her inappropriately or put his finger in her vagina. She provided that testimony, even though the prosecutor warned her that she could *Page 16 
be prosecuted for perjury, presumably based on the testimony she had given when she was eight years old, and even though, at the prosecutor's urging, the trial court told her that she had a right to remain silent, that anything she said could be used against her in a court of law, that she had a right to an attorney, and that, if she could not afford an attorney, one would be appointed for her.
 {¶ 29} On cross-examination, the prosecutor asked A.S. about her memory of her childhood:
 Q. And isn't it true you told me that you don't remember most of your childhood?
 A. Yes, it is.
 Q. And I asked you how you knew these things didn't happen and you said you just felt and knew it in your heart; do you remember that?
 A. Yes.
 Q. And you told me that you had no independent recollection of whether it happened, it was just your feelings, correct?
 A. Yes.
 Q. Okay. So you're not testifying from any memory at this point, right?
 A. No. But it is my belief that if these things had happened, I would remember them.
 Q. It's your belief, correct?
 A. Uh-huh.
 Q. You don't know that for certain?
 . . . . *Page 17 
 A. For certain, no, I honestly cannot, you know, recall anything, but I know that this didn't happen.
On redirect, A.S. repeated her testimony that she knew Mr. Covender had not molested her:
 Q. Had Mr. Covender taken his finger and placed it and done what he allegedly or what was proven I guess back in 1996 up to today, had he done that, would you remember that?
 A. Yes.
 Q. And you know for a fact that did not happen, correct?
 A. Yes.
On recross, the prosecutor again challenged her:
 Q. . So you can't say what things happened during that time then, you're just, you're solely just guessing at that point, correct?
 . . . .
 A. The thing is is that I may not remember a lot, but I know that the kind of person I am, I would not block something like that out. I wouldn't. It's not who I am and it's not, it wouldn't be that way.
 Q. Again, you have no independent recollection of when you were younger, correct?
 A. Correct.
 Q. And you'll concede that that's somewhat abnormal, correct?
 A. Yes.
 {¶ 30} In its Journal Entry, the trial court wrote that A.S.'s testimony "withstood and was tested by a well crafted and forceful cross examination." The *Page 18 
majority, however, has concluded, based upon the prosecutor's cross-examination, that A.S.'s testimony was not based on "personal knowledge." I cannot agree.
 {¶ 31} When I was five years old, I broke my left arm. I remember where I was, what I was doing, and who I was with when I broke my arm. I do not remember anything that happened the day before, the week before, or even the year before the day on which I broke my arm. Similarly, I do not remember anything that happened the day after, the week after, or even the year after I broke my arm. If I were asked whether I ever broke my leg while I was a child, I could definitively answer that I did not, even though I have no distinct recollection of much of my childhood. I am admittedly further removed from my childhood than is A.S. Further, I acknowledge that breaking a bone is far different from being sexually abused. A.S.'s answers on cross-examination, however, are not evidence that she was not testifying from personal knowledge when she said Mr. Covender never molested her; rather, her answers are an acknowledgement of the nature of memory. When a person says that something never happened to her, it is not because she remembers everything that happened to her every minute of every day of her life. It is because, based upon the nature of the event she has been asked to recall, she "believe[s]" or "feel[s]" that, if that event had happened to her, she would remember.
 {¶ 32} Having reviewed all the evidence presented at Mr. Covender's trial and at the hearing on his motion for new trial, I cannot say that the trial court lost *Page 19 
its way and created a manifest miscarriage of justice by concluding that A.S. testified truthfully at the hearing on Mr. Covender's motion for a new trial that the testimony she gave at trial was false. The trial court's resolution of the second step of its necessary analysis is not against the manifest weight of the evidence.
 {¶ 33} The final step of a trial court's analysis is to "discern whether the statements would materially affect the outcome of the trial." State v. Elkins, 9th Dist. No. 21380, 2003-Ohio-4522,2003 WL 22015409, at ¶ 16. The fact that a significant witness has recanted does not necessarily entitle a defendant to a new trial. Id. Rather, the trial court has discretion to determine whether a new trial is warranted. Id.
 {¶ 34} In this case, other than the nurse practitioner's testimony regarding physical evidence of abuse, testimony that was severely impeached on cross-examination, A.S.'s trial testimony and her answers given during repeated interviews were the only direct evidence supporting Mr. Covender's convictions for gross sexual imposition and felonious sexual penetration in connection with her. In order for this Court to conclude that the trial court abused its discretion by granting Mr. Covender a new trial once it concluded that A.S. had testified falsely at his trial, it would have to believe that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore, 5 Ohio St. 3d 217, 219 (1983). In his Judgment Entry, the trial judge noted that he had read the entire trial transcript and reviewed the exhibits admitted at trial. Based on that review, *Page 20 
he concluded that the absence of A.S.'s false testimony would have materially affected the outcome of that trial. The trial court's handling of Mr. Covender's motion for a new trial is not an example of unreasonable, arbitrary, or unconscionable conduct. Rather, it is an example of what a good judge does when called upon to exercise his discretion. The trial court's judgment should be affirmed. *Page 1